**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**JERRY S. JACK,**

    **Plaintiff,**

**v.**                                          **CASE NO. 6:08-cv-2069-Orl-35KRS**

**BOB HANSELL, et al.,**

    **Defendants.**

## ORDER

This case is before the Court on the following:

1. Plaintiff Jerry S. Jack's Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 (Doc. No. 1);

2. Defendant Robert Hansell and Raymond West's Motion for Summary Judgment (Doc. No. 31)[1];

3. Plaintiff Jerry S. Jack's Pretrial Statement (Doc. No. 35);

4. Defendants' Pretrial Statement (Doc. No. 36);

5. Defendants' Memorandum of Law in Support of the Motion for Summary Judgment (Doc. No. 42);

6. Plaintiff Jerry S. Jack's Supplemental Response to Defendants' Motion for Summary Judgment (Doc. No. 44); and

7. Plaintiff's Notice of Supplemental Authority (Doc. No. 45).

---

[1] In support of summary judgment, Defendants submitted the deposition of Plaintiff (Doc. Nos. 32 and 41), along with an affidavit from Raymond West (Doc. No. 33).

**I.    Factual Background**

Plaintiff Jerry S. Jack ("Plaintiff"), a prisoner in the State of Florida proceeding *pro se*, filed this action pursuant to 42 U.S.C. section 1983 against Defendants Sheriff Robert Hansell of the Osceola County Sheriff's Office and Deputy Raymond West.[2] *See* Doc. No. 1. Plaintiff's complaint arises out of the stop and search of a vehicle in which Plaintiff was a passenger. *Id.*

On March 12, 2007, Deputy West arrested Plaintiff for possession of cocaine and possession of drug paraphernalia (Doc. No. 31 at 1). Plaintiff had been a passenger in a vehicle driven by William Welborn (Doc. No. 1 at 8). Welborn's brother, Gus Schretchen, was seated in the front passenger's seat, and Plaintiff was seated in the back of the vehicle. *Id.*[3] The vehicle was traveling on South Orange Blossom Trail when it was pulled over by Deputy Matthew Pippin[4] of the Osceola County Sheriff's Office for having a broken taillight (Doc. No. 31, Exhibit A).

According to Plaintiff, Welborn exited the vehicle to speak with the police officer. (Doc. No. 41 at T 18). Schretchen and Plaintiff remained in the vehicle, and Schretchen

---

[2] Plaintiff's complaint names "Robert West" as a Defendant; however, the correct name of the Defendant is Raymond West.

[3] Plaintiff stated that he was seated in the rear of the vehicle on the driver side (Doc. No. 41 at T 14) while Defendant West recalls Plaintiff sitting in the rear seat on the passenger side (Doc. No. 33 at 3). It is undisputed that Plaintiff was the only person sitting in the rear of the vehicle.

[4] Plaintiff did not remember which deputy initiated the vehicle stop, but he could not deny that it was Deputy Pippin (Doc. No. 41 at T 20). Deputy West stated that Deputy Pippin initiated the stop and he, West, was called in as backup (Doc. No. 33 at 1).

told Plaintiff that there was an outstanding warrant for Plaintiff's arrest. *Id.* A deputy[5] approached the vehicle and asked the two for identification. *Id.* A few minutes later the deputy asked Plaintiff and Schretchen to exit the vehicle. *Id.* at T 19. The deputy arrested Schretchen. *Id.* at T 21-22.[6] Deputy Pippin then asked whether he could search the vehicle. *Id.* at T 22; Doc. No. 33 at 2. Welborn refused to consent to the search (Doc. No. 34 at 11). Within three to four minutes, Deputy Pippin, with the use of a drug-trained canine, walked around the vehicle (Doc. Nos. 41 at T 22; 33 at 2). Deputy Pippin informed Deputy West that the canine had "hit on the vehicle for narcotics" (Doc. No. 33 at 2).

Deputy West searched the vehicle and noticed a red Marlboro cigarette pack in the rear right passenger's side, between the seat and the side panel of the vehicle. *Id.* The cigarette pack was located such that it would be next to the person occupying the passenger's side of the back seat. *Id.* Deputy West looked inside the pack and found a glass cylinder with a brass-type Brillo pad on the end, with residue on it, that, based on his training and experience, was an instrument used for smoking crack cocaine. *Id.* at 2-3. The cigarette pack also contained a metal rod, which Deputy West believed to be used for packing crack cocaine into the glass cylinder. *Id.* at 3. Finally, the pack contained an off-

---

[5] Plaintiff did not know if Deputy Pippin or Deputy West asked them for identification. In Deputy West's affidavit, he states that Deputy Pippin spoke to the occupants of the vehicle while they were inside the car (Doc. No. 33 at 2).

[6] Plaintiff's affidavit states that Schretchen was not arrested until after the police searched the car (Doc. No. 34 at 10). However, at his deposition Plaintiff agreed with the police report and testified that Schretchen was arrested immediately upon exiting the vehicle (Doc. No. 41 at T 21-22). The Court strikes the portion of the affidavit that is inconsistent with his unequivocal deposition testimony, as is discussed, *infra*. *See Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

white substance that tested positive for cocaine. *Id.* At this time, Deputy West arrested Plaintiff for possession of cocaine and drug paraphernalia. *Id.*

Plaintiff recounts a different version of events. According to Plaintiff, prior to his arrest, he saw a deputy search the inside of the vehicle (Doc. No. 41 at T 22). Plaintiff did not see the deputy find a cigarette pack. *Id.* at T 22-23. Plaintiff saw the cigarette pack after he was transported to the Osceola County Jail. *Id.* at T 23. Plaintiff stated that the cigarette pack and the illicit objects were not his. *Id.*

While Plaintiff was in jail he was served with a warrant for violation of probation on April 10, 2007 (Doc. No. 31; Exhibit B). Plaintiff pleaded guilty to the violation of probation, and was sentenced to 103 days in the Osceola County Jail with credit for 103 days of time served. Exhibit D. On June 4, 2007, the State Attorney's Office filed a "No Information Notice" in the drug possession case, finding the evidence insufficient to proceed to prosecution. Exhibit E. It was noted that "[p]roximity alone is insufficient to establish constructive possession of an item in a jointly occupied car." *Id.*

## II.     *Motion to Strike*

On March 25, 2010, Defendants filed a Motion to Strike Portions of Plaintiff's Affidavit (Doc. No. 37). Defendants allege that Plaintiff testified in his deposition that a search of the vehicle occurred after the arrest of passenger Gus Schretchen. *Id.* at 2. However, Plaintiff later filed an affidavit with this Court claiming the search of the vehicle occurred prior to the arrest of Schretchen. *Id.*; *see also* Doc. No. 34. The Court denied the motion without prejudice (Doc. No. 40). The Court ordered Defendants to file Plaintiff's

entire deposition transcript and noted that it would consider the motion to strike in conjunction with the motion for summary judgment. *Id.*

Respondents' contentions regarding Plaintiff's deposition and affidavit are correct. In the deposition transcript Plaintiff testified to the following:

> Q. Well, was there a warrant out for William [Welborn]?
>
> A. No.
>
> Q. There was for Gus [Schretchen] though; right?
>
> A. Correct. Yes.
>
> Q. Did they arrest Gus?
>
> A. Yes.
>
> Q. When did they arrest Gus, before or after they walked the dog around [the car?]
>
> A. I believe as soon as they came back with the identification. As soon as they asked us to step out of the vehicle, I believe, and put in handcuffs.
>
> Q. So I have the sequence right. William gets out of the car, gets pulled over, the deputy, whichever one is back there. And at some point a deputy comes up to the window. He asks for identification. You give [sic] to them. He leaves. A couple minutes comes back asked everyone to get out and arrests Gus, and takes the two of you back behind the car. And they are talking now to William about searching the vehicle; am I right?
>
> A. Correct. Correct.

(Doc. No. 41 at T 21-22). Contrary to this testimony, in his affidavit Plaintiff states that the police first searched the vehicle and then arrested him and one of the other passengers of the vehicle (Doc. No. 34 at 10). Plaintiff notes that one of the deputies asked him and Schretchen to produce identification. *Id.* A few moments later, they were asked to step out of the vehicle. *Id.* at 11. An officer asked the owner of the vehicle for consent to

5

search the vehicle, and the owner refused.  *Id.*  The Sheriff's office canine detected narcotics in the vehicle, and the officers searched the vehicle.  *Id.* at 11-12.  Plaintiff was then arrested for possession of cocaine.  *Id.* at 12.  Finally, the police arrested Gus.  *Id.*

The Eleventh Circuit has held that "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).  In *Van T. Junkins*, the court found that the district court did not err in determining an affidavit was a sham and that the plaintiff did not, by merely giving an affidavit with contrary facts, create such a genuine issue of material fact as to require submission to a jury.  *Id.* at 659.  A court must find "some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit."  *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987); *see also Durden v. Citicorp Trust Bank, FSB*, Case No. 3:07-cv-974-J-34JRK , 2009 WL 6499365, at *8-9 (M.D. Fla. Aug. 21, 2009).

In the instant case there is a clear inconsistency between Plaintiff's deposition testimony regarding the sequence of events surrounding his and his co-passenger's arrests and his affidavit recounting a different sequence of events.  Plaintiff changed his sworn testimony after Defendants filed a motion for summary judgment alleging that the police search of the vehicle was incident to a lawful arrest and thus was not unreasonable, and he has not offered any explanation for the change.  Accordingly, the Court grants Defendants' motion to strike paragraphs 16, 17, 18, and 19 of Plaintiff's affidavit.

### III. *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c)(2), summary judgment shall be granted if it appears that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing that there is no genuine issue of material fact lies on the moving party, and it is a stringent one. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rule 56(e)(2) further provides as follows:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Essentially, the nonmoving party, so long as that party has had an ample opportunity to conduct discovery, must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If, after the movant makes its showing, the nonmoving party brings forth evidence in support of its position on an issue for which it bears the burden of proof at trial that "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted).

### IV. *Discussion*

In his complaint, Plaintiff alleges his Fourth, Fifth, and Fourteenth Amendment rights were violated when Welborn's vehicle was illegally stopped, illegally searched, and Plaintiff

was illegally arrested for possession of cocaine and paraphernalia.  Defendant West alleges that he is entitled to qualified immunity from Plaintiff's claims.  Moreover, Sheriff Hansell contends that he is entitled to summary judgment as there is no policy or custom of the Osceola County Sheriff's Office responsible for any constitutional violation and because he had no actual involvement in any constitutional violation.

### A. Defendant West

Defendant West argues he is entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 129 S. Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (quotation omitted).  "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law."  *McCullough v. Antolini,* 559 F.3d 1201, 1205 (11th Cir. 2009) (citations omitted) (quotations omitted).  To receive qualified immunity a defendant must first prove he or she was acting within the scope of his or her discretionary authority.  *See Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).

Once a defendant shows that he or she was acting within his or her discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate.  *Lumley v. City of Dade City*, 327 F.3d 1186, 1194 (11th Cir. 2003).  The Supreme Court has set forth a two-part test for the qualified immunity analysis.  First, a

court must determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If Plaintiff's version of the facts set forth the violation of a constitutional right, the next step is to ask whether the right was clearly established at the time of the alleged conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). It is within a court's discretion to decide which prong of the qualified immunity analysis to address first. *See Pearson*, 129 S. Ct. at 818.

As an initial matter, pursuant to the allegations in Plaintiff's amended complaint, the Court finds that Defendant West was acting within the scope of his discretionary authority as a deputy sheriff during the incident that forms the basis of Plaintiff's claim. Conducting vehicle searches and making arrests are within a deputy sheriff's discretionary authority. Thus, the resolution of the qualified immunity question requires a determination of whether Plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, whether the right was clearly established at the time of the alleged violation.

First, the Court notes that it is unclear what specific claim Plaintiff is attempting to assert against Defendant West. While Plaintiff states that his Fourth, Fifth, and Fourteenth Amendment rights were violated, the only possible constitutional violation the Court can construe from Plaintiff's allegations against Defendant West would be under the Fourth and Fourteenth Amendment; specifically for violating his rights during the allegedly illegal traffic stop, search of the vehicle, and false arrest. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979) (noting that stopping an automobile and detaining its occupants implicates the Fourth and Fourteenth Amendments). Plaintiff's claims, as they relate to Defendant West, do not implicate the Fifth Amendment.

### 1. Vehicle Stop

Plaintiff contends that Welborn's vehicle was pretextually, or illegally, stopped (Doc. No. 1 at 8). Defendant West asserts that the vehicle was stopped by Deputy Pippin as the vehicle had a broken taillight (Doc. Nos. 31 at 10-11 & Exhibit A; Doc. No. 33 at 1). During his deposition Plaintiff admitted that the deputy discussed with Welborn the fact that his taillight was broken (Doc. No. 41 at T 41). Plaintiff stated that he was unsure whether the taillight was really broken. *Id.*

A police officer "may conduct a traffic stop where the officer has probable cause to believe that a traffic violation has occurred." *Hudson v. Hall*, 231 F.3d 1289, 1295 (11th Cir. 2000) (citations omitted). Driving a vehicle with a non-functioning taillight is a traffic violation in the State of Florida. § 316.221(1) & (3), Fla. Stat. (2007). Deputy Pippin stopped the vehicle because he believed that it had a non-functioning taillight. Deputy Pippin therefore had arguable probable cause for the traffic stop. Plaintiff alleges that the vehicle was stopped for a pretextual or illegal reason, but he gives no factual basis to support this statement. Plaintiff has not demonstrated that the traffic stop violated his Fourth Amendment rights.

### 2. Vehicle Search

Next Plaintiff asserts that the search of Welborn's vehicle was illegal, as Welborn did not consent to the search (Doc. No. 1 at 8-9). Defendant West contends that the vehicle search was proper as it was incident to a lawful arrest (Doc. No. 31 at 11). West further argues that the Eleventh Circuit Court of Appeals has found probable cause to search a vehicle when a drug-trained canine alerts to the presence of drugs. *Id.* at 12.

"'[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 129 S. Ct. 1710, 1716 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "Among the exceptions to the warrant requirement is the search incident to a lawful arrest." *Id*. "When a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460 (1981) (footnotes omitted). However, the *Gant* Court recently rejected the *Belton* Court's broad reading of when a search incident to an arrest can be made. 129 S. Ct. at 1719. The *Gant* Court held that a police officer is authorized to search a vehicle incident to its recent occupant's arrest "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* A search of a vehicle incident to a lawful arrest also may be effectuated "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id.* (quotation omitted).

The vehicle in this case was stopped for a traffic offense. The owner of the vehicle, Welborn, did not consent to the search of his vehicle. Furthermore, the officers could not have had a basis for believing evidence of the traffic offense, a broken taillight, might be found in the passenger compartment of the vehicle. However, passenger Schretchen was arrested on an outstanding warrant. Pursuant to *Gant*, the police could search the vehicle incident to Schretchen's lawful arrest if Schretchen was within reaching distance of the passenger compartment at the time of the search. According to Plaintiff, after the deputy

11

ordered them to leave the vehicle, Schretchen was handcuffed by one of the officers (Doc. No. 21 at T 21-22). There is no indication that Schretchen was within reaching distance of the passenger compartment, given his restraint. The Court does not find that there were any officer safety concerns that would thus allow a search of the vehicle.

While the search of the vehicle violated the rule announced in *Gant*, the police, in conducting the search, were reasonably relying on prior well-settled precedent that allowed police to search the passenger compartment of a vehicle incident to a lawful arrest, regardless of the location of the arrestee and officer safety. *See United States v. Davis*, 598 F.3d 1259, 1266-68 (11th Cir. 2010) (holding that a good-faith exception to the exclusionary rule applies when a police officer relied on the holding in *Belton* which was later disavowed in *Gant*); *United States v. Mitchell*, Case No. 09-10025, 2010 WL 850241, at * 9 (11th Cir. Mar. 12, 2010) (finding a police officer acted on the objectively reasonable belief that the search was constitutional under the law in effect at the time). "[A] search performed in accordance with . . . [an] erroneous interpretation of Fourth Amendment law is not culpable police conduct." *Davis*, 598 F.3d at 1265.

Schretchen was lawfully arrested pursuant to an arrest warrant. West conducted a search incident to that arrest. As the search occurred on March 12, 2007, well before the United States Supreme Court narrowed the search parameters permitted by *Belton*, the Court determines West was acting in food faith when he relied on the rule announced in *Belton*. The Court finds, therefore, that while the search may have been contrary to the protections afforded by the Fourth Amendment, Office West, acting in good faith, enjoys

qualified immunity as these constitutional protections were not clearly established at the time of the officer's conduct.

### 3. *Plaintiff's Arrest*

Plaintiff's final claim is that he was illegally or falsely arrested without a warrant. (Doc. No. 1 at 9). Defendant West asserts that he is entitled to qualified immunity as he had arguable probable cause to make the arrest (Doc. No. 31 at 12-13).

A "warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." *Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002) (citation omitted) (quotation omitted); *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990). A claim of false arrest, however, is barred by the existence of probable cause, *Marx v. Gumbinner*, 905 F.2d 1503, 1505-06 (11th Cir. 1990), or by the subsequent conviction of the accused, *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Williams v. Sirmons*, 307 F. App'x 354, 358 (11th Cir. 2009) (citing *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002); *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998)). "In the context of a claim for false arrest, an officer is entitled to qualified immunity where that officer had 'arguable probable cause,' that is, where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest' the plaintiff." *Davis v. Williams*, 451 F.3d 759, 762-63 (11th Cir. 2006) (quoting

*Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)); *Von Stein*, 904 F.2d at 579.

In the instant case, the parties do not dispute that Plaintiff was arrested by Defendant West for possession of cocaine and paraphernalia (Doc. Nos. 33 at 3; 34 at 4; 41 at T 24). The parties also do not dispute that later the State filed a "no-information" and did not charge Plaintiff with possession of cocaine and paraphernalia (Doc. Nos. 31 at 16; 34 at 4). The question before the Court, therefore, is whether reasonable police officers in the same circumstances and possessing the same knowledge as Defendant West could have believed that arguable probable cause existed to arrest Plaintiff. According to West, he had arguable probable cause to arrest Plaintiff because Plaintiff could have exerted constructive possession over the contraband found in the vehicle (Doc. No. 31 at 13).

The existence of probable cause to arrest is based on objective standards. *Von Stein*, 904 F.2d at 578 (citation omitted). Thus, the level of proof needed to make a probable cause determination is considerably less than that which is needed to obtain a conviction, and the fact that a criminal defendant is later acquitted or released does not by itself establish that probable cause was initially lacking. *Marx*, 905 F.2d at 1507.

Constructive possession exists "when a person has knowledge of the thing possessed coupled with the ability to maintain control over it or reduce it to his physical possession even though he does not have actual personal domain." *United States v. Derose*, 74 F.3d 1177, 1185 (11th Cir. 1996). A "court may find constructive possession by finding ownership, dominion, or control over the contraband itself or dominion or control

over the premises or the vehicle in which the contraband was concealed." *Id*. Plaintiff did not have actual possession of the drugs or the paraphernalia that was found in the vehicle. Defendant West found a cigarette pack in the rear right passenger's side, between the seat and the side panel of the vehicle (Doc. No. 33 at 2). Plaintiff was the only passenger in the back seat of the vehicle. Defendant West stated that the cigarette package was in plain view and that contraband is commonly hidden in cigarette packs (Doc. No. 33 at 2). The Court, therefore, concludes that Defendant West had arguable probable cause to believe that Plaintiff knew about the contraband in the cigarette pack and had the ability to exercise control or domain over the contraband. Plaintiff has not shown that the arrest violated his Fourth Amendment rights.

As Plaintiff has not established that the vehicle stop, vehicle search, or arrest violated his constitutional rights, the motion for summary judgment is granted with respect to Defendant West.

### *B. Defendant Hansell*

Plaintiff has also named Robert Hansell, the Sheriff of Osceola County, as a Defendant in this lawsuit. Plaintiff's complaint contains no allegations against Sheriff Hansell. Governmental entities may be liable when an alleged constitutional violation resulted from the execution of the policy or custom of the governmental entity. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the

government as an entity is responsible under § 1983."). The policy or custom must be the "moving force" behind the constitutional deprivation. *Id*. at 694-95.

Sheriff Hansell seeks summary judgment because there is no evidence of an unconstitutional custom, policy, or practice that would support a § 1983 claim against him in his official capacity. The Court agrees. Plaintiff has not come forward with any evidence that the governmental entity that Sheriff Hansell represents had a custom or policy which resulted in the wrongs asserted in the complaint. Sheriff Hansell cannot be held liable in his official capacity under § 1983 unless the alleged constitutional violations resulted from deliberate conduct arising out of the execution of an official policy or custom. Having failed to point to any custom or policy which was the "moving force" behind his alleged constitutional deprivations, Plaintiff's official capacity claim must fail. *See Bd. of the Cnty Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.").

## *V. Conclusion*

The Court finds that Defendants Robert Hansell and Raymond West are entitled to summary judgment as a matter of law on Plaintiff's claims.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment (Doc. No. 31) is **GRANTED**. Defendants West and Hansell are entitled to summary judgment as a matter of law on Plaintiff's claims.

2. The **Clerk** of Court is directed to enter a judgment in favor of Defendants and against Plaintiff.

3. The **Clerk** of Court is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this 7th day of September, 2010.

Copies to:
pslc 8/23
Counsel of Record
Jerry S. Jack

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE